The next case is number 22-1959, Berkley National Insurance Company versus Atlantic-Newport Realty LLC et al. At this time, would counsel for the appellants please introduce himself on the record to begin. Good morning, Your Honors. May it please the Court, Timothy Madden for the defendant appellants, Granite Telecommunications and Atlantic-Newport Realty. With the Court's permission, I'd like to reserve two minutes for rebuttal. You may. Thank you. I'd like to begin, Your Honors, with the issue of whether Berkley, the plaintiff in this case, adequately pleaded a right to reimbursement. And I think that's a matter of contract under Massachusetts law. And under the Erie Doctrine, this Court's obligation, obviously, is to follow Massachusetts law, and if it's unclear for some reason, to predict what Massachusetts would do in this particular factual circumstance. And I think the SJC has set forth a framework that this Court, this case rather, falls squarely within, and that dictates what this Court should do with this case. And that framework is composed or comprised of three cases. It's the Goldberg case from 1997, the Cotter case from 2013, and the Ken's Food case from just earlier this year. Taken together, those cases establish that because the insurance policy contains no right to reimbursement in the policy itself, and because the defendants did not agree to reimbursement outside of the policy with the insurance company, that under Massachusetts law, under these facts, there's no right to reimbursement. In Goldberg, the SJC ruled that for an insurer like Berkeley to be entitled to reimbursement, there must be an agreement to that effect either in the policy or outside of the policy. And where there's no policy provision providing for reimbursement, then the insurance company has three options. The first option is it can seek to obtain the insurer's agreement outside of the context of the policy, that if the insured prevails on its coverage position of no coverage after settling the case, then the insured agrees to reimburse the insurance company. If the insured won't agree to that, or another option that Goldberg sets forth is that the insurance company can secure the insured's quote, specific authority to reach a particular settlement, which the insured agrees to pay. So what that means is that the insured either says, I'm agreeing that it's not covered, and if you can negotiate the settlement, I'll pay it or I'll reimburse you without any contingency of a finding of no coverage. Failing that, there's a third option that the SJC laid out in Goldberg, which is that the insurance company can negotiate the best settlement that it can in the underlying tort case, and if the insured won't agree to reimbursement, then the insurance company has to stand on its decision or its position that the case isn't covered, and it should put the settlement to the insured and say, I've negotiated the best settlement that I possibly can in this case. It's X dollars. If you would like to pay it, pay it. It's on you. If you would choose not to pay it, then we're out. We're no longer going to cover the case going forward, and that's what Goldberg said should happen in this. And can you just tell me what, practically speaking, what would happen in that third scenario? So you go to the insured and you say, we think this is a reasonable settlement, so we think we've completed our duty to defend, but we think you have to pay it, and if not, you can assume your own defense. Correct. Now, if the insured exercises that option to assume their own defense, what will then happen, practically speaking? Well, practically speaking, in the underlying tort claim, the insured would defend the case or itself, seek to settle it. In that setting, and maybe I'm confusing California law and Massachusetts law, unless California and Massachusetts are the same about this delimiting issue in the face of a reasonable settlement offer? Because what would happen is potentially then the insured would take over the defense. Correct. Presumably the insurer would not pay the settlement. Correct. But does that mean then now the potential is that the judgment can exceed the policy limit and the insurer is on the hook? Just let me finish. You see where I'm going? Yes, I do. The insurer is then on the hook for that potentially higher judgment and has no control over the litigation. Is that what would happen? Potentially, but that's why the insurance company should be in that situation, forced to make its decision. It's part of the bargain that when the insured buys insurance. And even under California law, that's what California basically says, the same thing, right? That's correct. Which is that the insurer at least has to put it to the insured. Correct. Here's the deal. Now the insurer may have reasons knowing that that's what they have to do not to want to do it because it's a pretty risky proposition for the insurer. Correct. So the insurance company in that circumstance can say to itself, it can do a calculation and say, I think this is a pretty good settlement under these facts. The insured is refusing to agree to a right to reimbursement. I now have to decide how convinced I am that there's no coverage. And the theory that this is a way of flushing out whether effectively the payment by the insurer is as a volunteer, in which case there couldn't be unjust enrichment. Correct. Among other reasons why there couldn't be unjust enrichment, but yes. And that was in some ways gotten at by the second part of the SJC framework that I was referring to, which is the Cotter case, which came some 15 years after Goldberg. And Cotter was a case where slightly different factually because it was an individual who had received disability benefits, and then it was later found not to have qualified for those benefits. Later it was determined by the insurance company and then by a court. And there the SJC said there's no right to reimbursement as a matter of contract. There's no policy term that it provides for reimbursement. But it also looked at the equities. Now I don't think it had to look at the equities in that case because Massachusetts law is that where there's a contract between parties, particularly sophisticated parties like this, that the equities should not be considered to supplement or supplant the terms of the bargain that the parties agreed to. But the SJC did look to equity there. And what they determined, and perhaps this is why they did it, is to take this opportunity to determine that the mere retention of the benefit by that individual, Mr. Cotter, does not mean that that individual was unjustly enriched. So here the mere retention of the benefits by the defendants, the benefits being the settlement payment paid to the underlying tort plaintiff and the defense costs incurred. What did they have in mind, though, in Cotter by looking to the equities? Because there's that paragraph where it says they did not show it was unjust enrichment. And then it says they didn't even establish the factual predicate for it. And then it goes through that. But the implication is that it wouldn't have been enough to show the factual predicate. The mere retention of the benefit. But. Something more might happen. And so the question is what is that something more? And could it be, and you tell me whether this makes sense, could it be an unreasonable demand for the insurer to pay the settlement under threat of suit? Because it seems to me that that's at least possible that the SJC would say, well, if that's what's going on, because if you just look at the unjust enrichment restatement, there would then be a demand for something off the contract you weren't entitled to. And so why wouldn't you be able to recoup if you made a completely unreasonable demand and threatened to sue them with it? So I have three answers. Hopefully I remember to get to each of them. The first is that I think what Cotter had in mind when it talked about conduct that might rise or raise the retention of the benefits to an unjust enrichment is in Cotter, for example, that individual didn't qualify because he didn't go to the right kind of doctor and seek the right kind of treatment. If he had lied about that and was getting the benefits, that may be something that the SJC had in mind. Like here, if, and there's obviously no evidence of this and it didn't happen, but if the defendants had conspired with Mr. Pafos to allow him to plead what they believed was a covered claim, that would be something that would be unjust. I guess the difficulty we've got in predicting is I know you're saying these things. Unfortunately, Cotter doesn't say any of that. No, it doesn't. And Cotter just tells us there's some equitable thing of unjust. Correct. We don't know exactly what it is. And so just before you, go ahead. Well, the second part of my answer is that in Goldberg, the 1997 case, we have really exactly what we have here in terms of a demand to cover the claim, a refusal to contribute, and a reference to potential liability of the insurance company. It's exactly, it's in our briefs, it's exactly what Goldberg did. Now, of course, there are also factual differences, you know, slightly. The big difference isn't the big difference that you were specifically told by the insurer, you're making a demand, aren't you, that we use our own money, and then there's no response to that statement for five days in which the mediation is occurring and which you're right there watching the payment occur. The response, though, comes that evening of the mediation where Counsel for Berkeley emails Counsel for Granite and says, we've reached the settlement, it's X dollars, we're reserving our rights to seek recoupment of that amount if we prevail in the declaratory judgment action in the district court. Counsel for Granite responded and said, we did not agree to that as a term of the settlement. Is that a material term of you funding the settlement, Berkeley? Berkeley then responds, it's on RA 586 in the record. Berkeley then responds and says, we're not asking for your agreement, we're not asking for your assent, we're simply telling you our position. So if Granite's not responding to a letter that says, that paraphrases and characterizes Granite's letter, is somehow Granite's acknowledgement of a right or acquiescence to a right. Well, I guess the question would be, one thing if you didn't respond, it's just another thing to not respond while participating in the mediation that then continues on, watching the check get passed. I mean, I don't know exactly who's responsible for that silence, but that's the odd, to me that's the rinker. Granite didn't sit by and watch the check get passed. Granite participated in the mediation, fair enough. The settlement amount was negotiated. And then there was this email exchange before the settlement was paid. At that point when Berkeley understood, if it didn't understand before, somehow. So that occurs at the exchange you're talking about, post dates. It's the evening of the mediation before any settlement is paid. And is that after the letter from Berkeley to you saying, so you're making a demand? Yes. The timeline is Granite's letter to Berkeley on August 25th saying, it's a covered claim. We urge you to settle it within the parameters suggested by defense counsel. We don't intend to contribute because it's a covered claim. And there you have exposure under 176D if you don't comport yourself accordingly. The next day, August 26th, is Berkeley's response that Your Honor characterized. Then August 31st is the mediation. So it was a few days later. The evening of August 31st is the email exchange I just mentioned where Granite said, we don't agree that you have a right to reimbursement. Is this a material term of you paying the settlement? Berkeley could have said in response, yes, it is. That would have put the decision to Granite. Granite then would have had to decide, do we want to agree to a right to reimbursement? What do we want to do? Okay, just two things. Under Goldberg, would that alone have been enough if they had answered whether it's a material term or would they have had to say, in our view, we've now fulfilled our duty to defend, and if you'd like to assume the defense, you can? Well, I think under Goldberg, if Berkeley had responded to Granite's email and said, it is a material term and we're not going to pay unless you agree, then Berkeley would have essentially been saying the third option. But they would need to do more, though. They would then need to say, and if you don't agree, we're not paying. And you assume your own defense? And you're on your own, Granite. You would have to say that, too. I believe you would. That's what Goldberg says. So your position is that there's no reservation of rights, or if there was, it's inappropriate, correct? Well, there's no reservation of rights because there's no right to reserve. There's no right in the contract. And that's the third leg of the SJC framework that I mentioned, which is the Ken's food case, which was on a case certified by this court, a question certified by this court, the SJC, where the SJC said you can't use an equitable right to reimbursement to supplement an insurance contract between two sophisticated parties. So there would have to be like a supplemental contract or something specifically reserving an agreement. There would have to be an agreement outside of it, unless there's a right to reimbursement in the policy, which there may be in some cases. But just so I'm understanding, Goldberg does not require an actual agreement. Yes, I believe it does, Your Honor. Well, I thought it was enough for you to say. Oh, I see. Because you're saying when you say you're on your own. Meaning you're defending the case. We're out. We, the insurance company, are out. At that point, if you pay, if the insurer pays, the insurer is just a volunteer. I'm not sure I follow that. At that point, if the insurer does pay, after having notified the insured, that what I'm trying to figure out is when you say here's the reasonable settlement, we'd like to pay it, we're going to come back for the money. If you don't agree, you're assuming your own defense. Correct. What happens if at that point, if the payment is made by the insurer and the insured hasn't said anything? Do you follow? Well, I think that's, in some ways, that's Goldberg. Goldberg says there has to be an affirmative agreement by the insured that the insurance company has a right to reimbursement. That's what I can't tell because that third prong of Goldberg says that it doesn't talk about agreement there. It says you have to tell the insured. Well, the third prong says the insurance company can negotiate the best settlement on behalf of the and put it to the insured to accept the And then say, just finish what it says. I'm not reading it. Then it says, and let them know that if you don't agree, you're on your own. Right. What if the insured is silent in response to that notification and the insurer pays? What happens? I think under Goldberg, the insured has not agreed. See, but under the California Supreme Court decision, it looks like notifying the insured that you're on your own is enough. It doesn't then say there has to be an agreement. So the insured just says nothing at that point, watches you pay. But the insured didn't say nothing in this case. The insured expressly rejected the right to reimbursement. And I'm just adding to, Your Honor has referred to California a couple of times. There's no doubt that there's two schools of thought on these issues. California falls in one. I think it's the only reasonable conclusion based on the SJC case law that I mentioned. Massachusetts falls into the other. But I guess to me, to be totally convinced of that, it would be helpful where you're seeing in that third prong under Goldberg that it operates differently than the California Supreme Court test. Because I don't see the word agreement. Yeah, I don't see the word agreement in that third option in Goldberg. Unless I'm missing something. So Goldberg says, as far as the third prong goes, the insurer may also notify the insured of a reasonable settlement offer and give the insured an opportunity to accept the offer. Pause for a second. I read that as to say, give the insured the opportunity to say, okay, I, the insured, will pay the settlement amount. Or assume its own defense. So the options, that option, Right, and so those options are presented. And then the insured is silent. But that's not what happened here. That's fine. I want to understand what the law of the SJC is. What is the SJC happens if the insured is silent? What is the insurer supposed to do at that point? Well, I think that's, to some extent, evident in Goldberg itself. And this is a distinction of the factual difference that Counsel for Berkley points out, which is that the fact pattern of that case is that Goldberg's lawyers had written letters to the insurance company saying, settle the case, it's covered. Settle the case, it's covered. We're not contributing. And if, and you have exposure, you know, you have some exposure under the law if you don't. Right, basically the letter that Granite wrote. There was then a trial and adverse finding to Goldberg. After the trial verdict, the insurance company's appellate counsel said, both sides appealed. We can't risk an appeal here because what if the appeals court decides that 93A applies? The trial court had said 93A doesn't apply between this relationship. What if the appeals court says it doesn't apply? That's bad law. We've got to settle this case. We don't want that to be the outcome. So they settled it without consulting with Goldberg. So there you have a situation where he said, we're not paying. I'm not paying. Goldberg's not paying. The insurance company then, some time passed, and they settled the case without notifying him. That's what I'm saying. What happens when they do notify and the insured is silent? As I read the California Supreme Court case, in that instance, the insurer can recoup. Just in the California Supreme Court case, it looks like the insurer can recoup so long as the insurer has notified the insured that there was a reasonable settlement and if you'd like to go on your own, you can. They don't have to get agreement. So if the insured is just silent and watches what happens, tough luck for the insured because the insurer put it to the insured. If the insured is coy, tough luck. If that's right and it's not clear to me Goldberg means to say something different, then this case looks a little harder to me. I think the answer to that is in two prongs. One is Goldberg doesn't say something different. Goldberg says there has to be an agreement, an acknowledgment of a reservation of rights. Goldberg's lawyer acknowledged the insurance company's reservation of its right to recoupment even though there was no such right in the policy. And the second is that, like I said, there are two schools of thought on this, broadly speaking, two schools of thought on this question. California falls into the school of thought that says if you don't allow recoupment in circumstances like this, you're giving the insured something they didn't pay for. I think based on the SJC case law that I've discussed, Massachusetts falls squarely within the camp that says if you do allow recoupment here, you are now forcing the insured to pay a settlement that it didn't expressly acknowledge or may not have agreed to on its own. But here it didn't. It did not, correct. And part of that last piece is that you're then reading into the insurance policy a right to recoupment where there is none. It's just a matter of how you read that last sentence in Goldberg, the third option. Perhaps. I would commend the court to read. I know it's not binding on this court, and it's a superior court case from the state court, the business litigation session, the Holyoke Mutual Insurance Company v. Byram case. I think Judge Kaplan does a very nice job of analyzing this issue in pretty much the most fulsome way that I could find. Thank you. That's helpful. Thank you. Thank you, counsel, at this time. If counsel for the appellee will please introduce himself on the record if he can. May it please the court. Michael Aylward for the Plaintiff Appellee, Berkeley National Insurance Company. The reason that last sentence is in Goldberg is why Goldberg has nothing to do with this case. The insurer in Goldberg, for reasons of its own, desperately wanted to get rid of that case because of the impact on its other professional liability matters. It would suddenly become 93A violations if they lost the appeal. The concern expressed by the SJC, and you see it in cases like Jacobson, the Blue Ridge case in California, is that insurers sometimes want to settle cases. They don't want to pay for experts. They don't want to try the case, and the insurer doesn't want to settle the case. The point of that language in Goldberg is to allow the insured where the insurer is settling over its objections to control its own destiny and control its own defense at its own expense. That is not what happened in this case. Well, let me just go before you get that just so I understand how you're reading that third sentence. Are you saying essentially it's the same test as Blue Ridge? No, I don't think so. What's different about it? Blue Ridge was decided well after Goldberg. I think they're apples and oranges. I think they're both directed to the possibility that the insured does not want to settle. It should be allowed to try the case. I don't want to be as abstract as you're being. I want to just be with the words. In Goldberg, as in Blue Ridge, there is this option in each instance where it says, in the absence there's agreement, there's language of agreement. Then they go to this third possibility in which the insurer puts it to the insured, I've got a reasonable settlement that I've negotiated. If you don't want it, you're on your own. And in each instance it just leaves it. That's another option for the insurer. That's in Goldberg, same almost formulation as in Blue Ridge. What is your understanding of what happens if the insured is silent after that disclosure is made? I think in a case like this where the insured is in the room and cheering the insurer on to settle, it's implicit that they want to settle, that they don't want to take over their own defense. So I think in that case silence is assent. I'm sure this is the large sophisticated company with counsel. If they objected to the settlement, if they wanted to take over their own defense, they would have said so. In the absence of any statement like that. So just to your reading of the California case and Goldberg is that if you then just are silent and watch everything happen, you're on the hook for it. But the precondition for that under both Blue Ridge and under Goldberg, as I read it, I've negotiated a reasonable settlement. If you don't like it, you're on your own. Where in the record did that happen here? When we filed our declaratory judgment action early in 2021, we expressly reserved the right to seek restitution for defense costs. Prior to the mediation, I contacted counsel for granted and said let's split this thing. You see the coverage issues. Let's work it out. That's what prompted the nasty letters. I just want the direct answer to my question. Is there something in the record that shows that once the settlement agreement was reached, the other party, the insured, was informed here is the reasonable settlement. If you don't want it, you assume your own defense. Not as such. Well then how can this comply with Goldberg or Blue Ridge? Because I'm not sure Goldberg is good law, frankly. No, no, no. I think the case to watch is Cotter. Cotter cited Goldberg, clearly explained that much of the reasoning at Goldberg focused on the fact that the insurer was protecting its own interests and expressly adopted the restitution section 35 restatement, which does not contain that language. All that the Cotter case said is in circumstances where one party of a contract demands performance from the other that is not due under the terms of the contract, the other party may render such performance under protest or with reservation of rights. Cotter doesn't mention that third prong of Goldberg. But, again, it's a dicta in Cotter because Cotter is dealing with a disability insurance case, and that's describing what the rule is for liability insurance cases. But you only need that third prong in Goldberg if you have a case like Goldberg where the insurer is settling over the objections of the insured for its own interests. That's not a core part of the doctrine of restitution, nor is it mentioned in the Well, is it fair to say that the way you're asking us to read the precedent doesn't leap off the pages of the cases, but it might suggest we need to certify? I think, honestly, I think the restatement and Cotter are clear enough. And the other point I really want to make is Because it is the case that we'd have to conclude that Goldberg's no longer good law. I think this Right? And that's not the kind of thing we are in the habit of doing. Let me put it differently. Goldberg may be good law for cases like Goldberg. I don't think it's meant to define all the situations in which equity is appropriate. I think in this case where the insured not only acquiesced to the settlement, but demanded the settlement and threatened the insurer with bad faith claims if it didn't settle, then what would be the point of saying take over your own defense if you want? The insurer is already controlling its own defense with its own lawyers. And let me just When you say that they demanded settlement with your money, where was that? What is the part of the record that you're referring to where that actual demand was made? That's the email. I'm mixing up my dates, but I think it's August 25th. It was a few days beforehand. In that email, I don't see any text in it saying you have to pay with your money this settlement. It was in response to a proposal that they pay half of the settlement. And then they gave some pretty lawyerly general language back, which you then said back, so I take it that's a demand to which they then never said anything. I propose that they pay 50%. They responded saying no, and you pay it. And if you don't, it's bad faith. Did they say you pay it? I believe so. I mean, I will check the record. The statement is there. Does it matter if they didn't say you pay it? But it would have been hard for them to argue bad faith on our part if they were going to pay it themselves. So it certainly was implicit, I mean, whether the words are explicitly there or not. I do want to go back to one point. His argument is because there's nothing in the policy that allows for restitution, we're not going to apply it, citing Kemp's Foods. The policy says there is no duty to defend claims for bodily injury or property damage that are not covered. Judge Stearns ruled that Berkeley National had no duty to defend, and he ruled based on the allegations in the complaint. Berkeley National voluntarily undertook a defense. It had no duty to do that. Now, given the fact that the policy says you don't have a duty to defend cases that aren't covered, why would there be language in the policy addressing a right to restitution for paying claims that are not covered when there's no duty in the first place in the policy? This is a case about equity. It's not a case about insurance law. There is nothing in the policy one way or the other. But since the Saladin case in 1947. Well, let me ask you this. Because I can imagine a scenario where since the duty to defend is based upon the pleadings, it wouldn't be apparent from the face of the pleadings that it's a covered event, but that things could develop at either trial or at the settlement stage that would at least bring into doubt whether it was in fact a covered event. So you could have a situation where there was no defense, but eventually based upon either a jury finding or whatever, it could later be determined to be a covered event. And my assumption in that event is that they would be entitled to a claim against you for the amounts payable to the accident victim. The duty to defend is deemed to be much broader than the duty to identify. But does it mean it can't change as circumstances arise because duty to defend is based upon the pleadings? It might hypothetically be the case. It was never the case in this one. The plaintiff's claim from the very start of this case throughout, even in the coverage case, was that he was exposed to toxic bacteria. But their position, which we have to take into consideration, is that the injury itself was not caused by the toxins. But that's not the point. If you look at RAS versus Travelers, this lens of settlement analysis, why did the case settle for the amount it settled for? Plaintiff's counsel going into mediation wanted $5 million. If we assume that it may have settled in part because it was the toxin and therefore from your perspective it would be uncovered, but the pressure on the other side is that it may not, it may have been no liability because the harm was from a medical condition, which I assume is what reduced the settlement amount in this case because there was a contested issue as to liability. As both factors come into play, so you can see that we have no defense based upon the pleadings but coverage based upon what happened at settlement or what happened at trial. And that's why it makes sense to allow what actually happened in this case. We settled the case, we avoided a runaway verdict, and then the parties got together and tried to work it out. That makes sense as opposed to a flat rule saying there's never a right to restitution or you pay something that you don't owe coverage for. Had the court ruled that there was a potential for coverage, we had a duty to defend, it might be a different analysis. But where... But they are appealing that. Yes. And that is an aspect that we have to consider. But as of today, the court has ruled that there was never a duty to defend. I mean... But even if the, I'm still stuck, but even if the district court is wrong on that and that Cotter and Goldberg together suggest that there are circumstances where in the absence of agreement you could recoup pursuant to the reservation of rights, there's still the question of whether you've satisfied the preconditions under Massachusetts law to do that. And I'm not getting a clear answer as to what you think the circumstances we're supposed to look at. What is the inquiry? So if I follow, you're saying Goldberg does say you have to do this third thing. That wasn't done, in fact. But then you say, but actually Goldberg's not really the law. It's now Cotter. And what is the Cotter inquiry? The Cotter inquiry is whether an insurer performed a duty and did not owe and the insured obtained was unjustly enriched as a result. That's very helpful. But what does unjust enrichment mean in that circumstance? In this case, the insurer... What's the inquiry that we're supposed to deduce and where would I get it from in SJC opinions? It's obviously not in Goldberg because you acknowledge you haven't complied with the third thing. It's hard to see how it's in Cotter because Cotter doesn't tell us what would have been unjust. So I'm a little bit at C. On your view, what is it in SJC law that I'm applying that helps you? I think you look at the basic cases like Keller, the basic cases involving restitution and what is an unjust benefit. In this case, the insurer put great pressure on the insurer to settle a case. And then in order to avoid... Let me back up one thing. It was $11 million in coverage. The highest demand in this entire case was $5.25 million. It was never a risk there wouldn't be enough coverage. Why did they want to avoid a trial? What they were worried about was a verdict on a finding of causation that would have implicated fungi or bacteria exclusion. They put pressure on Berkeley National to settle. And immediately after the settlement, they came up with all these theories about how, well, it really wasn't bacteria. It was a wet sock. The case never would have settled for $5.25 million on a wet sock theory.